UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALDO RAINERO,

                        Plaintiff,

            - against –

MICHAEL J. ASTRUE, Commissioner
of Social Security,


                        Defendant.
------------------------------------------------------------x
DEARIE, Chief Judge.

**MEMORANDUM & ORDER**

08 CV 4266 (RJD)

This case arises out of the Remedial Order issued in <u>Dixon v. Sullivan</u>, which directed

the Social Security Administration ("SSA") to reevaluate claims for disability insurance benefits

filed between June 1976 and July 1983.  <u>See</u> 792 F. Supp. 942 (S.D.N.Y. 1992), aff'd sub nom

<u>Dixon v. Shalala</u>, 54 F.3d 1019 (2d Cir. 1995).  During that period, SSA was found to have

"engaged in systematic and clandestine misapplication of disability regulations . . . causing

plaintiffs' disabilities to be classified as 'non-severe' and their applications to be denied without

full review."  <u>Dixon</u>, 54 F.3d at 1020-21.

Aldo Rainero ("claimant") appeals from the December 11, 2007, decision of

Administrative Law Judge ("ALJ") Peter F. Crispino, denying claimant's application to reopen

his April 1977 benefits claim pursuant to <u>Dixon</u>.  Because the ALJ applied the correct legal

standard and substantial evidence supports the ALJ's finding that claimant was not disabled at

the time of his initial application, the decision is affirmed.

**Background**

Disability and the Dixon presumptions

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Naturally, then, "[i]f an individual performs 'substantial gainful activity,' he does not meet the definition of 'disabled,' and is therefore no longer eligible for benefits." Powers v. Apfel, 1999 WL 493354, at *1 (S.D.N.Y. 1999) (citing 20 C.F.R. § 404.1571).

Under the governing regulations, "the duration requirement to establish disability will not be met" where a claimant undertakes substantial gainful activity "within 12 months after the onset of [the] impairment [at issue] and before [receiving] any notice of determination or decision finding disability." Determining Disability and Blindness; Substantial Gainful Activity Guides, 65 F. Reg. 42774 (2000) (interpreting 20 CFR § 404.1520(b)). As the Supreme Court has affirmed, the statute and regulations "permit[] the use of hindsight." Barnhart v. Walton, 535 U.S. 212, 223 (2002). That is, SSA may look after the fact to a claimant's documented work history to determine whether the claimant's inability to work could "be expected to last for a continuous period of not less than 12 months" from the onset date alleged. 42 U.S.C. § 423(d)(1)(A).

The requirement that a claimant not be gainfully employed immediately following an application is incorporated into the administrative procedures for evaluating disability claims. "The Social Security regulations set forth a five-step sequential evaluation for adjudicating claims for disability insurance and SSI benefits." Gennardo v. Astrue, 333 F. App'x 609, 610

(2d Cir. 2009).  "If an individual is found to be not disabled at any step, the Commissioner need not proceed to the next step."  Swainbank v. Astrue, 356 F. App'x 545, 547 (2d Cir. 2009) (citing 20 C.F.R. § 404.1520(a)).  "The first step in the sequential process is a decision whether the claimant is engaged in 'substantial gainful activity.'  If so, benefits are denied."  Dixon, 54 F.3d at 1022 (citing 20 C.F.R. §§ 404.1520(a)-(b)).

At issue in Dixon is "Step Two, commonly known as the 'severity regulation,' which addresses whether a claimant's impairment is 'severe.'"  Id.  In Dixon, the Second Circuit upheld the district court's finding that, between June 1976 and July 1983, SSA adjudicators systematically misapplied disability regulations at the second step of the sequential analysis by: (1) refusing to consider certain listed impairments as severe, and (2) refusing to consider whether the non-severe impairments of claimants amounted to severe impairments if combined.  The Second Circuit affirmed the validity of a Remedial Order enabling the readjudication of all claims filed during this period which were denied on the stated ground that the claimants' impairments were "non-severe."  Id. at 1037-38.

Due to the cost and difficulty of reconstructing files, many of which were lost or destroyed, the Dixon Remedial Order directs SSA to determine whether "certain rebuttable presumptions apply, which serve to reduce the number of plaintiffs whose claims must be readjudicated."  Id. at 1034.  Two presumptions are relevant here.  A rebuttable presumption of disability applies if the claimant "received a favorable decision awarding benefits for any subsequent period of disability" and "medical evidence relevant to that decision demonstrates that, given the [claimant]'s condition at the time of the favorable decision, it is reasonable to presume that he or she was disabled as of the date of the prior administrative determination which resulted in class membership."  Remedial Order ¶ 13.  By comparison, a rebuttable

presumption of <u>non-disability</u> applies if "employment records available to SSA indicate a period of employment longer than six months following the denial or termination that forms the basis of class membership" accompanied by "earnings in excess of the minimum monthly amounts prescribed" by SSA for substantial gainful employment.  <u>Id.</u>  Absent "evidence to the contrary," the presumptions are intended to be outcome determinative.  <u>Id.</u>  Nevertheless, the Remedial Order "does not relieve plaintiffs of the ultimate burden of proof."  <u>Dixon</u>, 54 F.3d at 1037.

Review of a claimant's file is not limited to the period at issue in the claim that was originally filed.  During readjudication, the "SSA shall also consider all subsequent periods, except that disability for any period which was the subject of a disability determination rendered after July 25, 1984 need not be considered."  Remedial Order ¶ 11.  This provision requires SSA to evaluate a class member's application "up to the date of readjudicating, even if the person never filed another claim for benefits."  <u>Dixon</u>, 54 F.3d at 1038.  Where a presumption of disability applies, moreover, "and the class member is found to be disabled as a result, he or she will be found disabled from the earliest possible entitlement date."  Remedial Order ¶ 13.

<u>Claimant's case history</u>

Claimant was born in 1935 and is a high school graduate.  He began working for the New York City Sanitation Department in 1962.  From 1972 to 1976, while working for the Sanitation Department, claimant attended college.  He became licensed as a registered nurse in 1976.  (Tr. 53, 267-68.)

In April 1977, claimant filed an application for disability insurance benefits alleging derangement of the spine, with a disability onset date of November 24, 1976.  In June 1977, SSA rejected the claim as "F1," a code indicating that SSA believed claimant's condition to be "non-severe."  (<u>Id.</u> at 288.)  Because SSA either lost or destroyed claimant's file, this is the only

information available regarding claimant's April 1977 application. This finding also provides the undisputed basis for claimant's inclusion with the class of applicants able to request readjudication under <u>Dixon</u>. (See <u>id.</u> at 290.)

In November 1993, claimant reapplied for disability benefits. In connection with the reapplication, claimant reported that he worked for the Sanitation Department from 1962 to 1977, for five days per week, and that he worked as a nurse for United Cerebral Palsy ("UCP") from 1977 to 1978, again for five days per week. (<u>Id.</u> at 53.) According to the 1993 application, while at UCP, claimant "was in charge of 1 unit of 100 patients," "gave out medications" and made entries in medical charts." (<u>Id.</u>) He alleged disability as of September 2, 1978, the date on which his condition made him stop working. (<u>Id.</u> at 49.) Additionally, claimant stated that he "worked for 1 year after retiring from the City of NY." (<u>Id.</u>)

By decision dated December 22, 1994, ALJ Wallace Tannenbaum found that claimant's combined cervical derangement, arthritis of the lumbosacral spine and hearing loss rendered him incapable of performing even sedentary work. (<u>Id.</u> at 208.) Although the ALJ found claimant "disabled since September 2, 1978," (<u>id.</u>), claimant received benefits only for the period beginning in November 1992 as a claimant's eligibility for benefits cannot predate his application by more than 12 months.[1] <u>See</u> 42 USC § 423(b); 20 C.F.R. §404.315.

Pursuant to <u>Dixon</u>, claimant then requested that his April 1977 benefits application be reviewed. In May 2000, SSA notified claimant that he was ineligible for relief under <u>Dixon</u> based on earnings records between 1976 and 1978 showing income above the minimum required for substantial gainful employment. In July 2000, claimant requested a hearing before an ALJ. In support of his request, claimant completed a Work Activity Report, in which claimant wrote,

_____

[1] Claimant began receiving pension payments from New York City in June 1977.

contrary to his prior representations, that he worked at UCP between January and June 1978 for only 3 days per week.  (Id. at 298.)  He added that he "was absent frequently from [his] job due to rh[e]umatoid arthritis [and] had to stop work within 6 months."  (Id. at 300.)  Further, claimant attributed his 1977 earnings to being "kept on payroll under NYC Sanitation law until [his] disability was granted" in June 1977.  (Id. at 299.)

By decision dated September 5, 2002, ALJ Crispino rejected claimant's Dixon request on the ground that claimant reported earnings between 1976 and 1978 that rose to the level of substantial gainful activity.  Noting that SSA's efforts to locate claimant's April 1977 application file were unsuccessful, the ALJ found that "there was no medical evidence whatsoever" from the relevant period and that "no presumption may be made" that claimant was disabled prior to September 2, 1978.  (Id. at 277.)  By Order dated March 4, 2006, the Appeals Council directed the ALJ to "evaluate claimant's work activity during the period at issue," to "evaluate the Dixon presumptions of disability and non-disability as they relate to the present case" and to "issue a new decision."  (Id. at 17.)

On December 2007, ALJ Crispino again found claimant ineligible for relief under Dixon because the record indicated that claimant had performed substantial gainful activity between November 24, 1976 and September 2, 1978.  According to the ALJ, "performance of substantial gainful activity is a threshold issue in the determination of disability" and precludes a finding of disability "even if [the claimant] allege[s] significant limitations and even if he is found disabled for a subsequent period of time."  (Id. at 19.)  The ALJ found claimant's testimony that he worked at UCP for less than six months in 1978 not to be credible in light of claimant's assertion to SSA in 1993 that he worked at UCP for a full year, combined with claimant's testimony that

his memory on this topic would have been better in 1993.[2] (Id. at 18.) Thus, the ALJ found that claimant's 1978 employment "cannot be characterized as an unsuccessful work attempt." (Id.) "[M]indful that there is a Dixon presumption of disability if claimant received a favorable decision awarding benefits," as claimant did in 1994, the ALJ found that the later disability determination was not reasonably related to the onset date alleged in claimant's April 1977 application because claimant had "engaged in substantial gainful activity during the period at issue (prior to September 2, 1978)." (Id. at 19.)

On August 13, 2008, the Appeals Council denied claimant's request for review, prompting the current action. On June 7, 2010, after the parties cross-moved for judgment on the pleadings, this Court ordered additional briefing regarding the effect, if any, of claimant's employment between November 24, 1976, and September 2, 1978, on his Dixon claim. The Court heard oral argument in the case on July 8, 2010, and now affirms the ALJ's decision.

## Discussion

In evaluating claimant's appeal, this Court "'review[s] the administrative record de novo to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard.'" Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir. 2007) (quoting Pollard v. Halter, 377 F.3d 183, 188 (2d Cir. 2004)). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." Rivera v. Comm'r, 728 F. Supp. 2d 297, 318 (S.D.N.Y. 2010).

_____

[2] The ALJ noted that UCP no longer possesses records regarding claimant's employment.

7

<u>Whether the ALJ applied the correct legal standard</u>

A pair of legal determinations undergirds the ALJ's finding claimant ineligible for relief under <u>Dixon</u>. <u>First</u>, the ALJ expressed the view that the period at issue dates from November 24, 1976 to September 2, 1978. Thus, the ALJ focused on evidence of the claimant's disability during this timeframe alone. As the Remedial Order mandates, when re-evaluating prior disability applications, the "'SSA shall also consider all subsequent periods, except that disability for any period which was the subject of a disability determination rendered after July 25, 1984 <u>need not be considered</u>.'" <u>Dixon</u>, 54 F.3d at 1037-38 (quoting Remedial Order ¶ 11 (emphasis added)). In December 1994, ALJ Tannenbaum found that claimant had been "disabled since September 2, 1978." (Tr. 208.) This determination, made after July 25, 1984, means that ALJ Crispino need not have considered evidence of claimant's disability for the period covered by ALJ Tannenbaum's decision.

Put simply, claimant's successful 1993 application beat <u>Dixon</u> to the punch. Claimant does not fit within the class of persons, contemplated by <u>Dixon</u>, who were "found to have been non-disabled in [1977] and who never filed another claim." 54 F.3d at 1038. Instead, claimant fits within a class afforded greater protection: namely, those who "received a favorable decision awarding benefits for any subsequent period of disability" and, therefore, who may be entitled to a presumption that their initial claims were meritorious. Remedial Order ¶ 13. Although "consideration of evidence for periods after claimants' original denials is essential" to determining eligibility for benefits, <u>Dixon</u>, 54 F.3d at 1038, evidence of claimant's disability after September 2, 1978, would be cumulative because the fact of his disability during that time is established. As discussed below, whether this determination relates back to claimant's April 1977 application is a separate question, which the ALJ answered in the negative.

Second, the ALJ did not err in refusing expressly to consider the medical evidence presented by claimant or determine whether this evidence rebutted the presumption of disability established by claimant's employment record from 1976 to 1978. The ALJ correctly noted that the "performance of substantial gainful activity is a threshold issue in the determination of disability." (Tr. 19.) This bedrock principle applies even where the claim is one for retroactive benefits pursuant to Dixon, whose Remedial Order incorporates the normal five-step sequential procedure for evaluating disability claims. See Remedial Order ¶ 11 ("[T]he "SSA shall evaluate class members' claims in accordance with the Social Security Act, the sequential evaluation process set forth [in the regulations] and the policies and procedures of SAA.")

The Second Circuit labeled Dixon part of a series of "Step Two class actions" occurring across several circuits. 54 F.3d at 1038. Dixon addressed a peculiar wrong, i.e., that the second step in the sequential evaluation process "appeared to have been applied 'in a manner inconsistent with the statute' – that is, to deny benefits to claimants who in fact met the statutory definition of disability." Id. at 1030 (quoting Bowen v. Yuckert, 482 U.S. 137, 157-58 (1987) (O'Connor, J., concurring)) ("'[S]tep two may not be used to disqualify those who meet the statutory definition of disability.'").

In somewhat opaque fashion, the ALJ below found that claimant did not meet the statutory definition of disability in April 1977 based on evidence of substantial gainful activity within 12 months of his alleged onset date. To qualify as disabled under the statute, a claimant's "inability to engage in gainful work, not just the debilitating medical condition, must continue for at least twelve months." Valoy v. Barnhart, 94 Soc. Sec. Rep. Serv. 472, 2004 WL 439424, at *8 (S.D.N.Y. 2004) (citing Walton, 535 U.S. 212). Hence, the ALJ did not presume claimant disabled under the Remedial Order. Rather, independent of the sui generis presumptions upheld

in <u>Dixon</u>, the ALJ in fact conclusively found claimant not to be disabled. This Court finds no legal error in the ALJ's applying the statute as validly interpreted by SSA.

<u>Whether substantial evidence supports the ALJ's conclusion</u>

Consistent with the above, claimant concedes that "if the Court were to find that [he] engaged in substantial gainful activity within the first twelve month period following his November 24, 1976 onset date, then that independent finding would operate to defeat his April 1977 disability claim." (Cl. Supp. Br., Dkt. #48, at 6 n.2.) Although this properly recites the legal standard, it mischaracterizes the standard of review on appeal. To affirm the ALJ's decision, this Court need not "find" that claimant engaged in substantial gainful activity within the 12 months beginning November 24, 1976. Instead, this Court need only satisfy itself that "a rational connection" exists "between the [ALJ]'s legal conclusion and the medical and lay testimony presented." <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 256, 256 (2d Cir. 1988). That standard undeniably is met.

The regulations for determining whether work rises to the level of "substantial gainful activity" are set forth at 20 C.F.R. §§ 404.1571-.1575. Consistent with the record, the ALJ found that, between 1976 and 1978, claimant earned several times in excess of the monthly amounts required to establish gainful employment.[3] (Tr. 17; <u>see id.</u> at 47, 251.) In connection with his 1993 application, claimant certified under penalty of criminal prosecution: "I became unable to work because of my disabling condition on September 2, 1978." (<u>Id.</u> at 24.) Claimant also certified: "I have reviewed the wages posted to my record and they are correct." (<u>Id.</u> at 26.)

_____

[3] The ALJ found that, as a registered nurse at UCP, claimant earned $15,300 in 1976 ($1,275 per month), $11,653.50 in 1977 ($971 per month) and $11,779.53 ($981 per month). Earnings which establish substantial gainful activity for these three years are $230, $240 and $260 per month, respectively.

The regulations "provide that if a claimant worked more than six months at the substantial gainful activity level, the claimant's work cannot be considered an unsuccessful work attempt regardless of why the work ended." Richards v. Barnhart, 2009 WL 236688, at *4 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1574(c)(5)). An unsuccessful work attempt, perforce, is not substantial gainful activity. At the ALJ hearing on July 31, 2007, however, claimant testified that he worked as registered nurse at UCP for six months or fewer, from the "winter months" to the "middle" of 1978. (Id. at 269-70.) In his Work Activity Report completed in 2000, moreover, claimant wrote that he worked at UCP between January and June 1978 for only 3 days per week. (Id. at 298.) These later statements conflict with claimant's earlier account that he worked as a nurse for UCP from 1977 to 1978, "for 1 year after retiring from the City of NY," for five days per week. (Id. at 53.)

Faced with these inconsistencies, the ALJ found claimant's earlier account more persuasive. Nonetheless, claimant urges this Court to accept his 2007 testimony and reject the ALJ's conclusion that claimant's activities in 1977 and 1978 "cannot be characterized as an unsuccessful work attempt." (Id. at 18.) The ALJ's assessment of claimant's credibility, like "any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). For example, where an ALJ bases an adverse credibility determination on "an inconsistency that d[oes] not exist," a court "cannot say that it is supported by substantial evidence." Horan v. Astrue, 350 F. App'x 483, 484 (2d Cir. 2009). Here, however, the ALJ could justifiably have credited claimant's 1993 recitation of his work history over the conflicting – some might say conveniently so – later account. After being questioned about the discrepancies, claimant himself made the obvious concession that his recollection of events occurring in the late 1970s would have been better in 1993 than in 2007. (See Tr. 270-73.)

If claimant's 1993 account is accurate, as claimant certified it to be under penalty of perjury, then claimant worked at UCP for a full year ending in September 1978. (<u>Id.</u> at 53.) This would mean that claimant, as he previously reported to SSA, began working full-time as a nurse, at the latest, in September 1977. This in turn would permit the ALJ to find that claimant had engaged in substantial gainful activity during the 12 months following November 24, 1976. As claimant acknowledges, this "independent finding would operate to defeat his April 1977 disability claim." (Cl. Supp. Br. at 6 n.2.)

Claimant analogizes to <u>Grella v. Barhart</u>, 2005 WL 1607969, at *2 (E.D.N.Y. 2005) (Ross, J.), in which the claimant "was presumed not to be disabled because he had engaged in substantial gainful activity for greater than six months after the denial of benefits," but went on to rebut the presumption. <u>Grella</u>, however, deals primarily with the "quantum or weight of evidence needed to rebut the presumption of non-disability" appearing in Paragraph 13 of the Remedial Order. <u>Id.</u> at *3. It does not address whether a claimant who is found to have engaged in substantial gainful activity at the time of his initial application has a valid <u>Dixon</u> claim. Notably, the claimant in <u>Grella</u> "testified that he stopped working in 1982 when he entered the Phoenix House for drug and alcohol rehabilitation," where he was "was an inpatient . . . for approximately three years, and "started working again in 1984 as a truck driver." <u>Id.</u> at *1. Thus, although the <u>Grella</u> court held that the claimant's uncontroverted medical evidence had "effectively rebutted the presumption of non-disability," <u>id.</u> at *4, the <u>Grella</u> claimant was <u>entitled</u> to offer such evidence because he did not engage in substantial gainful activity within the 12 months following his alleged disability onset date. Discounting that evidence, unlike here, could serve "to deny benefits to a claimant who may fit within the statutory definition." <u>Dixon</u>, 54 F.3d at 1024 (internal quotation marks omitted).

In the alternative, claimant argues that the Court should reopen his April 1977 benefits claim, amend the disability onset date to September 2, 1978, and award benefits from that date. Although the Court is sympathetic to claimant's plight, this argument is inconsistent with Dixon's limited grant of authority and the factual record in this case. Claimant already has brought a successful claim for disability alleging a September 2, 1978, onset date. The ALJ, "mindful that there is a Dixon presumption of disability if claimant received a favorable decision awarding benefits for any subsequent period of disability," (Tr. 19), rejected the notion that "it is reasonable to presume [from this decision] that [claimant] was disabled as of the date of the prior administrative determination which resulted in class membership," Remedial Order ¶ 13 (emphasis added).

Although the 1994 disability finding was based partially on spinal derangement, the same impairment alleged in claimant's April 1977 application, the prior administrative denial occurred in June 1977. Claimant alleged a UCP work termination date in September 1978. Having previously secured a disability finding on the strength of the latter representation, claimant may not now abandon this assertion for one purpose (denying that he performed substantial gainful activity) while relying on it for another (amending the onset date in his original application). Claimant's motivation for making the representation is irrelevant. "The purpose of judicial estoppel is not to look for, or punish, outright lies, but 'to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" In re Adelphia Recovery Trust, — F.3d —, 2011 WL 420428, at *14 (2d Cir. 2011) (quoting New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001)); see also DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 102 (2d Cir. 2010) ("Judicial estoppel applies to sworn statements made to administrative agencies such as the Social Security Administration as well as

to courts.").  The Remedial Order, moreover, authorizes a finding that claimant is "disabled from the earliest possible entitlement date" only where a presumption of disability attaches.  Remedial Order ¶ 13.

To consider this a case of warring presumptions ignores that Congress and SSA have accorded special significance to the 12 months following a claimant's alleged onset of disability. In sum, the ALJ could properly have concluded, based on claimant's own sworn statements, that his inability to meet the statutory definition of "disability" subsumes any administrative finding of "non-severity" made in connection with claimant's April 1977 application for benefits.  "To rule otherwise might leave the implication that someone who feels himself in need of further income is free to misrepresent important information to the Social Security Administration." Simon v. Safelite Glass Corp., 128 F.3d 68, 71 (2d Cir. 1997).

**Conclusion**

In discussing the sequential process which governs entitlement to benefits, the Second Circuit affirmed in Dixon that "'step two may not be used to disqualify those who meet the statutory definition of disability.'"  54 F.3d at 1024 (quoting Yuckert, 482 U.S. at 158).  Those who cannot meet the statutory definition at all, like the ALJ reasonably concluded of claimant, regrettably receive no comfort from Dixon.  Therefore, the ALJ's December 11, 2007, decision denying claimant's request for SSA to readjudicate his April 1977 benefits claim pursuant to the Remedial Order in Dixon must be affirmed.

SO ORDERED.

Dated: Brooklyn, New York
      March 31, 2011                                       s/ Judge Raymond J. Dearie

                                                    _____
                                                    RAYMOND J. DEARIE
                                                    United States District Judge